WILLIAM R. McGREW, APPELLANT, V. NEBRASKA TELEPHONE COMPANY, APPELLEE.

FILED NOVEMBER 13, 1922. No. 22146.

1. **Telegraphs and Telephones: DEPRIVATION OF SERVICE: LIABILITY.** One who uses a station on a private branch telephone service of his corporation for his own purposes and on his own private business, notwithstanding that said service is expressly limited by contract with the telephone company to the business of said corporation, all in accordance with the order of the state railway commission, cannot make an injury to such private business of his own, caused by a deprivation of the continuance of such personal and private use by him, a basis for the recovery of damages from the company.

2. **Principal and Agent: ACTS OF AGENT.** He who commits the matter of readjustment of his own and his concern's service connections and relations with a telephone company to a servant cannot accept a portion of such servant's doings in that behalf, and reject the rest, at least without notice to said company.

3. **Trial: DIRECTION OF VERDICT.** *Held*, that reasonable men could not have concluded from the evidence adduced that the order for what the defendant did was not given upon the authority of the plaintiff; and that the court's direction of a verdict in defendant's favor was not erroneous.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE. *Affirmed.*

*Blackburn & King,* for appellant.

*Edgar M. Morsman, Jr.,* contra.

Heard before MORRISSEY, C. J., ALDRICH, FLANSBURG and ROSE, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

The plaintiff was listed in the October, 1917, issue of defendant's directory in four ways: (1) "Douglas 6345

McGrew, Dr. W. R. Phys., 714 Keeline Bldg."; (2) "Douglas 2170 McGrew, Dr. W. R. Office, 735-40 Keeline Bld.;" (3) "Harney 5181 McGrew, Dr. W. R. Res. 506 So. 31st St.;" (4) "Douglas 6345 McGrew, W. R." The first was an alphabetical listing by virtue of a joint user service with one Dr. Pollard under the latter's contract with the defendant company, and the last was a business classification listing under said contract and service The second was an alphabetical listing going with a station on a P. B. X. (private branch exchange) which the Prairie Life Insurance Company had by contract with the defendant, and was all that plaintiff could claim under such a P. B. X. And the third was by virtue of plaintiff's residence telephone agreement.

By the joint user of 6345, above referred to, the plaintiff, McGrew, had general telephone service. By the described P. B. X. he could telephone or be telephoned to only in connection with the business of the Prairie Life Insurance Company. We hold this from the language of the contract, though plaintiff does not concede it. It remains to be explained that the plaintiff was at all times the medical director of said insurance company, and that in order to give him a station on its P. B. X. it was necessary to run a wire from the company's suite, out and around other offices, to 714 Keeline building, where plaintiff had his professional offices with Dr. Pollard, and joint user of Douglas 6345. This explains why plaintiff was shown in the above listings at both 714 and 735-40 of the building. It also indicates, as was the fact, that he had two telephones in his room at 714, one of which was in connection with 6345 and the other of which was his P. B. X. connection with 2170 in the insurance company's office.

Later in the fall, and before the issue of the February, 1918, telephone directory, Dr. McGrew, having been made the president of the Prairie Life Insurance Company, as well as its medical director, gave up his office at 714 of the Keeline building and ordered out his two telephones

there. His brief concedes so much, though it probably was not his intention to give up his station on the company P. B. X., or the listing that went with it, but only to have that station transferred to the company offices at 735-40 and to have his P. B. X. listing changed to correspond. The order for these removals was conveyed by telephone from the young lady operator (so she styles herself) in the Prairie Life Company's offices to the defendant, which at once took out said telephones and proceeded to issue its February directory without any listing of Dr. McGrew either at 714 or 735-40. This was more than he wanted, for, as the giving up of his joint user service at the former number automatically removed his name from the business classification listing, he was left without mention in the new directory, except as possessing a telephone at his residence. He alleges in his petition that he was entitled to a listing of his name, telephone number, and office address in said February issue; that defendant was negligent in omitting the same; and that in consequence he suffered damage in loss of practice to the extent of $5,000. The defendant telephone company denied the averments of the petition, and said that it conducts its business under the state railway commission, which exercises exclusive control of its rates and service, and prescribes its rules in all details of its operation; that all of its service is under contract with subscribers in accordance with such rules; that it has a joint user service whereby one who pays $1.50 a month may use the telephone of a subscriber, providing it be in the subscriber's room or in a room adjacent thereto, and may have alphabetical and business listing in the company's directories; that plaintiff, McGrew, had such a joint user with Dr. Pollard, but gave it up in December, 1917; and that he never was a subscriber to defendant's business service. The answer contains other matter not necessary to be noted here. The facts established by the evidence are in large part as heretofore stated. The trial court directed a verdict for the defendant company. The

assignments of error are two: That the court erred in so directing a verdict; and that the court erred in admitting in evidence exhibit 21, the general supplemental tariff of the defendant.

It appears that the defendant took and acted upon orders over the telephone for discontinuances and reduction of service, though requiring written verification for extensions and new business. It was doubtless figured that the work of reduction and discontinuance would by its very nature discover mistakes, if mistakes there were, and lead to their immediate correction. But, while the rule may have worked well in the main, it resulted in this case in the removal of both listings as well as both telephones, a matter of at least much irritation to the doctor, who had upon the giving up of his office at 714, moved over to 735-40 and used a station on the P. B. X. of the Prairie Life for all of his business, company and personal.

The change of service clerk at the telephone exchange took the message from the Prairie Life operator and is positive in her testimony that the latter ordered just what was done. Examination of her information forms and work orders (exhibits 13, 14, etc.) rather confirms than discredits her testimony in this regard. And the Prairie Life operator or stenographer does not testify in opposition—does not testify at all. True, Dr. McGrew testifies that he gave no order for such removal or listing. But he personally gave no order whatever to the defendant in connection with the removal of his telephones at 714. The order was given by the Prairie Life operator. It was according to his purpose that the two telephones be removed. In his brief he stands sponsor for that part of what the girl ordered. Such being the case, he should not be permitted, we think, to repudiate the remainder of her order. Reasonable men could not have concluded from the evidence adduced that the order for what the defendant did was not given upon the authority of the plaintiff.

Further consideration supports the judgment of the district court on other grounds. Considering that the withdrawal of plaintiff's listing was unauthorized, negligent, and such as to damage him, upon what basis could he recover? Clearly, if at all, upon a right to use a station on his company's 2170 P. B. X. for his own private business. But he had no such right. He had no contractual relation with the defendant and his right to use such station was limited entirely to his company's business. Exhibits 20 and 23 make this obvious: "The right of the lessee is to use the instruments and connecting wire where the lessor may place them, but not elsewhere, nor in connection with another line, under such rules as the lessor may from time to time prescribe, for the purpose of personal wire connection within the zone and with persons whom the exchange may connect with him for that purpose, upon his own and their business."

It is quite possible that the plaintiff habitually used the telephone of his company for purposes of his own, unconnected with the business of the company of which he was the president. Employees and officers of corporations commonly do. But this is by sufferance, and can work no estoppel against the company furnishing the service, nor establish such persons in a right to said use. The plaintiff was not entitled to user or to listing in his own behalf, and the denial of the same by the defendant, whether intentional or not, cannot be the basis of a recovery in his favor.

Taking this view of the case, it is quite immaterial that exhibit 21, the general supplemental tariff schedule, was received in evidence. We believe that the lower court committed no error in directing a verdict for the defendant.

AFFIRMED.